**KISOB LAW FIRM**
Apemwoyah Kisob Alaric-Lorenzo Esq. (SBN. 321507)
Alkisob@kisoblaw.US
Attorney and Counselor-at-Law
New York, California, Nigeria & Cameroon
SBN: 5402318, 321507, 094525 & 1853
3680 Wilshire Blvd Suite P 04-1147
Los Angeles CA 90010
Telephone:  7028634243
Fax: 2133838080

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF LOS ANGELES
# WESTERN DIVISION

| | |
|---|---|
| BRITTNEY ROSS; KANISHA HEREFORD<br><br>**Plaintiffs,**<br><br>vs.<br><br>LR CENTURY AIRPORT PARKING, LLC D/B/A JOE'S AIRPORT PARKING AND DOES 1 THROUGH 10, INCLUSIVE.<br><br>**Defendant(s)** | **Case No.:**<br>**COMPLAINT FOR:**<br>1. Discrimination in violation of the Unruh Civil Rights Act.<br>2. Intentional Infliction of Emotional Distress.<br>3. Violation of 42 USC § 1981.<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Brittney Ross and Kanisha Hereford (collectively **"Plaintiffs"),** demand trial by jury and allege as follows:

## PARTIES

1. At all times mentioned herein, Plaintiffs have resided in Salt Lake City, Utah.

2. Plaintiffs are informed and believe and based thereon allege, that at all times mentioned herein, defendant LR Century Airport Parking, LLC ("**JOE'S,**"

"**DEFENDANT**" and/or **"COMPANY")** was and is, a business entity, doing business in Los Angeles County California as Joe's Airport Parking.

## JURISDICTION AND VENUE

3. This court has jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy is greater than $75,000. Joe's is a Limited Liability Company formed in Delaware doing business in Los Angeles County as Joe's Airport Parking and has its principal place of business in Los Angeles County, California. Plaintiffs are residents of Salt Lake County, Utah. The amount in controversy far exceeds $75000.

4. Alternatively, the court has jurisdiction under 28 U.S.C. § 1331 (federal question), as this lawsuit arises under the Constitution and laws of the United States, and specifically pursuant to 28 U.S.C. § 1343, as this action seeks redress for civil rights violations under 42 U.S.C. § 1981 and as such, this Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367, as they arise from the same case or controversy as Plaintiff's claims under federal law.

5. Venue is proper in this court pursuant to 28 U.S.C § 1391 because the events giving rise to this complaint happened in this district (Los Angeles County) and because Defendant Joe's principal place of business is in Los Angeles County.

6. Plaintiffs' claims for attorneys' fees and costs under federal law are predicated upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1981.

7. Plaintiffs' claims for attorneys' fees and costs under state law is predicated upon California Civil Code § 52.1 and 52(a) which authorizes the award of attorneys' fees and costs in an action brought under those statutes, and California Code of Civil Procedure § 1021.5, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs whose actions vindicate important rights.

8. Defendant is vicariously liable for the actions of its employees. "An employer may be held vicariously liable for torts committed by an employee within the scope of

employment." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 208). Conduct is within the scope of employment if: it is reasonably related to the kinds of tasks that the employee was employed to perform; or it is reasonably foreseeable in light of the employer's business or the employee's job responsibilities. (CACI No. 3720). Joe's employees' actions were committed within the scope of her employment. Defendant must be held accountable in the assistant manager's stead.

## FACTS COMMON TO ALL CAUSES OF ACTION

9.  Upon information and belief and based thereon, on February 15, 2023 at 5:20 a.m., when the weather outside was blisteringly cold (approximately 46°F), Plaintiffs, a Lesbian couple who are Black, went into Joe's Airport Parking located at 6151 W. Century Blvd, Los Angeles, CA 90045 to wait for the airport shuttle.

10. Upon information and belief and based thereon, this was shortly after Plaintiffs parked the rental car which they had rented from Midway Car Rental. Plaintiffs were initially told after booking the rental by Midway's employee that after returning the car, Joe's will provide them with an airport shuttle.

11. Upon information and belief and based thereon, when Plaintiffs entered Joe's, they were told by Joe's employee that they had to wait outside until the shuttle arrived because they were "Midway customers." The employee continued to point at a sign saying it was the policy. There were about 5 non-Black people inside Joe's waiting.

12. Upon information and belief and based thereon, Plaintiff Kanisha Hereford asked the employee if Plaintiffs could please wait inside because it was freezing outside and it was 5:00 am in the morning, and he said no and pointed at the sign.

13. Upon information and belief and based thereon, Plaintiffs waited outside until about 5:45 a.m. and then went back inside asking to see the sign or policy the employee had referenced earlier. It was freezing outside and Plaintiff Hereford's hair was wet. Plaintiffs could not stand waiting outside any longer. When the employee showed the sign again it read "no public restroom." Plaintiffs asked him where the policy for "No Midway customers" was and he didn't show one.

ROSS ET AL V. LR CENTURY AIRPORT PARKING, LLC.

COMPLAINT FOR DAMAGES.

14. Upon information and belief and based thereon, there were many White Midway customers coming in and waiting on the shuttle who were never asked or forced to wait outside like Plaintiffs. Plaintiff asked one of the White male customers who was inside the waiting area and he confirmed that he was a Midway customer. When Plaintiffs told the employee that they felt segregated and racially profiled, the employee got up from the desk and walked out of the building and never returned.

15. Upon information and belief and based thereon, Plaintiffs were embarrassed and humiliated. They feel like they are subhuman. Plaintiffs feel emotionally and mentally assaulted. To have been asked to wait outside in the blisteringly cold weather because Plaintiffs are a BLACK female couple is an emotional jail term for life.

## FIRST CLAIM FOR RELIEF
## (DISCRIMINATION IN VIOLATION OF THE UNRUH CIVIL RIGHTS ACT)
### Brought by all Plaintiffs Against All Defendants.

16. Plaintiffs hereby incorporate by reference all preceding paragraphs as if set forth herein.

17. California Civil Code § 51 (b) states, "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

18. § 52 (a) of the same code, states "(a) Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to § 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in § 51, 51.5, or 51.6.

19. The classes protected by the Unruh Act are illustrative, not exhaustive, as the Unruh Act is intended to protect all persons from arbitrary discrimination. *Vaughn v. Hugo Neu Proler Int'l.,* 223 Cal. App. 3d 1612, 1617 (1990); *O'Connor v. Village Green Owners Assn.*, 33 Cal. 3d 790, 795 (1983). Joe's employee discriminated against Plaintiffs because of their race and race was used as a distinction to deny them full and equal accommodations, services, facilities and privileges as all other customers. Plaintiffs who are African Americans, were not allowed to wait inside the waiting room meanwhile White and other non-Black customers were allowed to do so.

20. Attached to this Complaint as **Exhibit 1** is a picture showing two White persons believed to be Midway customers, approaching Midway's key drop area on the day and about the time of the incident giving rise to this lawsuit. Attached as **Exhibit 2** is a picture that shows the same two White persons displayed in Exhibit 1, waiting for the shuttle inside Joe's lobby on the day and about the time of the incident giving rise to this lawsuit. Attached as **Exhibit 3** is a picture that shows another White male believed to be a Midway customer approaching Midway's key drop area on the day and about the time of the incident giving rise to this lawsuit. Attached as **Exhibits 4** and **5** are pictures showing the same White male displayed in Exhibit 3 waiting for the shuttle inside Joe's lobby on the day and about the time of the incident.

21. Upon information and belief, Joe's employee intentionally discriminated against Plaintiffs as there is reason to believe they have animus against Blacks and Lesbians. Their animus was a substantial motivating reason for their discrimination against Plaintiffs as there is no other way anyone can explain why Black customers should be told to wait outside in frigid conditions while White customers are not. The employee could also tell that Plaintiffs were a couple and this furthered his resolve to kick them out. In *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232 [152 Cal.Rptr.3d 392, 294 P.3d 49]; CACI No.2507, "Substantial Motivating Reason" was explained to be "something that moves the will and induces action even though other matters may have contributed to the taking of the action." Joe's cannot rely on the

restroom policy because Plaintiffs did not come there to use the restroom. Plaintiffs informed Joe's that they were Midway customers and had been asked to wait for the shuttle at Joe's. Joe's should not have allowed White Midway customers to wait inside while Black customers were told to stay outside.

22. Joe's employee's actions were the only cause of Plaintiffs' harm. Unruh Act violations are per se injurious, *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 33 [219 Cal.Rptr. 133, 707 P.2d 195. Over and above that minimum, to say Plaintiffs were harmed is an understatement. The shame, ridicule, humiliation and shock were and continue to be unbearable. Plaintiffs are still very young and for the rest of their lives would have to constantly worry whether they would be treated equally like people of other races. Plaintiffs feel that they are subhuman because of this incident.

## SECOND CLAIM FOR RELIEF
## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)
### Brought by all Plaintiffs Against All Defendants.

23. Plaintiffs hereby incorporate by reference all preceding paragraphs as if set forth herein.

24. Joe's employee engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress when they told Plaintiffs to wait outside in the cold simply because of the color of their skin. "Discrimination on the basis of race or color is contrary to the public policy of the United States and of this state. Although the anti-discrimination provisions of the federal Constitution relate to state rather than private action, they nevertheless evidence a definite national policy against discrimination." *Burks v. Poppy Construction Co*. (1962) 57 Cal.2d 463, 471 [ 20 Cal.Rptr. 609, 370 P.2d 313].).

25. That the United States and the State of California both decry discrimination goes to show just how intolerable it is in this country to discriminate based on race. "The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical

or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge." (Rest.2d Torts, § 46, com. f, p. 75.)" *Crouch v. Trinity Christian Ctr. of Santa Ana, Inc.,* G055602, 14-15 (Cal. Ct. App. Sep. 12, 2019). Joe's employee knew or should have known that it was cold outside and asking Plaintiffs to wait outside would cause them to suffer severe emotional distress.

26. Also "behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress. (Prosser, Law of Torts, supra, at pp. 57-58; Rest.2d Torts, § 46, coms. e, f. Joe's employee knew that Plaintiffs were susceptible to mental distress arising from his actions. The employee also acted intentionally or unreasonably with the recognition that his discriminatory conduct could occasion mental distress on Plaintiffs.

27. Plaintiffs suffered and continue to suffer severe and extreme emotional distress; and Defendant's employee's outrageous conduct was the actual and proximate cause of the emotional distress. A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a community." (*Potter v. Firestone Tire & Rubber Co.* (1993) - 25 Cal. Rptr. 2d 550, 6 Cal. 4th 965, 863 P.2d 795.).

### THIRD CLAIM FOR RELIEF
### VIOLATION OF 42 USC § 1981
#### Brought by all Plaintiffs Against All Defendants.

28. Plaintiffs hereby incorporate by reference all preceding paragraphs as if set forth herein.

29. 42 U.S.C. § 1981, prohibits discrimination in the making and enforcement of contracts. When the employee told Plaintiffs, and not White Midway customers, to wait outside the seating area in blisteringly cold weather, the employee infringed upon Plaintiffs' right to make and enforce contracts. Midway had informed Plaintiffs that they

could wait for a shuttle at Joe's. This meant that they could make use of the seating area inside Joe's to stay warm while waiting. Joe's kicked them out but allowed White Midway customers to stay inside.

30. Prior to 1991, some courts held that there could be no viable claim under § 1981 where the actual "making" or "enforcing" of contracts was not impaired. See *Patterson v. McLean Credit Union*, 491 U.S. 176 (1989). Congress responded to the Court's narrow construction of one of the nation's oldest and most important civil rights statutes with the Civil Rights Act of 1991. Congress added subsections (b) supra and (c) to § 1981. In *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138 (9th Cir. 2006), the Ninth Circuit recognized a § 1981 claim for discrimination in nonemployment contracts. Id. at 1144.

31. In *Washington v. Duty Free Shoppers, Ltd.*, 710 F. Supp. 1288, 1289 (N.D. Cal. 1988) summary judgment was denied in § 1981 case where airport store required minority customers, but not white customers, to produce passports and airline tickets. In *Bobbitt v. Rage Bobbitt*, 19 F. Supp. 2d at 518-20., the Western District of North Carolina court held that the African American plaintiffs had established prima facie § 1981 claim because although they were eventually served by the Defendant's employee' restaurant, they, unlike the White customers eating there, were required to prepay for their food. The court found that the prepay requirement altered "an essential term of the customer/restaurateur contract because of race." *Id*. at 519. Consequently, the court found the defendant had denied the plaintiffs of the " 'enjoyment of all... terms and conditions of the contractual relationship' that were enjoyed by white" customers. *Id*. (quoting 42 U.S.C. § 1981). That Plaintiffs were eventually served did not change the court's analysis.

32. In *Christian v. Wal-Mart Stores, Inc*., the 6th circuit announced new prima facie test for a § 1981 claim that distinguishes the commercial services context from the employment context. The plaintiff, under the Christian rule, must establish (1) that she is a member of a protected class; (2) that she "sought to make or enforce a contract for services ordinarily provided by the defendant"; and (3) that she was "denied the right to

enter into or enjoy the benefits or privileges of the contractual relationship" by either (a) being "deprived of services while similarly situated persons outside the protected class were not" and/or (b) receiving services in a "markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.' Id. 252 F.3d 862, 868-69, 872 (6th Cir. 2001). In *Lindsey v. SLT Los Angeles, LLC,* 447 F.3d 1138, 1145 (9th Cir. 2005) the Ninth circuit stated interalia: "Although we find the Sixth Circuit's reasoning compelling, we need not decide today whether its modification of the fourth element of a prima facie case under § 1981 is required in many or all cases arising in a commercial, non-employment context. In the case before us, as we explain below, Panache has offered clear evidence that a similarly situated group of a different protected class was offered the contractual services which were denied to Panache. We, therefore, apply all four elements to this case without deciding whether the fourth element must be relaxed in other circumstances." *Id*, 447 F.3d 1138, 1145 (9th Cir. 2005).

Plaintiffs were told that they could not wait inside the seating area at Joe's. However, non-Black Midway customers were allowed to sit and wait inside while Plaintiffs nearly froze to death outside. Therefore, Plaintiffs were denied treatment which was afforded similarly-situated White Midway customers. Plaintiffs may never recover from this treatment.

## PRAYER

**WHEREFORE**, Plaintiffs prays for judgment against Defendant's employee as follows:

1. For general damages according to proof in excess of the jurisdictional minimum for this court;
2. For compensatory damages according to proof;
3. For punitive damages where allowed and according to proof;
4. For pre-judgment interest if allowed by law;
5. For costs of suit herein incurred;
6. For attorney's fees to the maximum extent allowed by law;

**ROSS ET AL V. LR CENTURY AIRPORT PARKING, LLC.**

**COMPLAINT FOR DAMAGES.**

9

7. For declaratory and injunctive relief as to all claims for relief where applicable;

8. And for such other further relief as the court may deem proper.

Dated this 21st day of June, 2023.

**KISOB LAW FIRM**



**Apemwoyah Kisob Alaric-Lorenzo Esq.**

Attorney for the Plaintiffs